Filed 12/9/15  P. v. Moore CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVON WESTLEY MOORE,<br><br>    Defendant and Appellant. | B260801<br><br>(Los Angeles County<br>Super. Ct. No. GA084339) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Darrell S. Mavis, Judge.  Affirmed as modified.

Janyce Keiko Imata Blair, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

A jury convicted defendant, Davon Westley Moore, of first degree murder. (Pen. Code, [1] § 187, subd. (a).) The jury found the murder was committed during the course of a robbery and a burglary and defendant personally used a knife in the commission of the killing. (§§ 190.2, subd. (a)(17)(A) & (G), 12022, subd. (b)(1)). Defendant was sentenced to life without the possibility of parole plus one year.

# II. THE EVIDENCE

On September 20, 2011, defendant and his girlfriend, Sabrina King, decided to rob a barbershop owner, King King. Defendant carried a knife with him he said, "In case it gets crazy." Ms. King had met Mr. King earlier that same day. Ms. King lured Mr. King to the door of his shop. Defendant waited close by but out of Mr. King's sight. When Mr. King opened the door, defendant sprang forward. Defendant then stabbed Mr. King multiple times. Defendant took a laptop from the barbershop. Defendant and Ms. King fled to a friend's house where they were subsequently arrested. Both changed into different clothing. Defendant and Ms. King left bloody footprints leading away from the barbershop and into an alley in the direction of the friend's house. Ms. King testified against defendant at trial pursuant to a negotiated plea agreement.

Elaine Csollany was sitting in a car parked near the barbershop at the time of the murder. Ms. Csollany had seen Ms. King in the area 30 minutes earlier. Around the time of the murder, Ms. Csollany saw defendant and Ms. King heading towards the barbershop at a quick pace. Twenty-five minutes later, Ms. Csollany saw the two running in the opposite direction. Defendant appeared to be holding a laptop computer. Ms. Csollany lost sight of defendant and Ms. King when they entered an alley.

---

[1] Further statutory references are to the Penal Code unless otherwise noted.

A confidential informant directed law enforcement officers to the house where defendant and Ms. King were arrested. Defendant had no injuries consistent with a fight. The clothing defendant had been wearing at the time of the murder tested positive for Mr. King's blood. Mr. King's blood was also found in the friend's house and on a knife recovered from that residence.

## III. DISCUSSION

### A. Accomplice Testimony

Defendant asserts it was prejudicial error not to instruct the jury Ms. King was an accomplice as a matter of law whose testimony must be corroborated. Pursuant to section 1111, "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense[.]" Here, the trial court instructed the jury Ms. King's testimony required corroboration only if it first found she was an accomplice.[2] We need not decide whether the trial court erred. Even if the trial court erred in allowing the jury to determine whether Ms. King was an accomplice, the error was harmless under any applicable standard. This is because the corroborating eyewitness and physical evidence

---

[2]    The trial court instructed the jury: "Before you may consider the statement or testimony of Sabrina King as evidence against the defendant, you must decide whether Sabrina King was an accomplice to that crime. . . . [¶] . . . [¶] If you decide that a . . . witness was an accomplice, then you may not convict the defendant of murder based on his or her statement or testimony alone. You may use the statement or testimony of an accomplice to convict the defendant only if: [¶] 1. The accomplice's statement or testimony is supported by other evidence that you believe; [¶] 2. That supporting evidence is independent of the accomplice's statement or testimony; [¶] AND [¶] 3. That supporting evidence tends to connect the defendant to the commission of the crime." (CALCRIM No. 334.)

connecting defendant with the crime was overwhelming.  (*People v. Houston* (2012) 54 Cal.4th 1186, 1225; *People v. Boyer* (2006) 38 Cal.4th 412, 467-468.)

## B.  Lying in Wait

The trial court instructed the jury on three theories of first degree murder including lying in wait.[3]  (§ 189 ["All murder which is perpetrated by means of . . . lying in wait" is first degree murder.]; see *People v. Streeter* (2012) 54 Cal.4th 205, 246-247.)  Defendant argues it was error to instruct the jury on lying-in-wait murder because the theory lacked evidentiary support.  Defendant asserts the evidence failed to establish a substantial period of watching and waiting.  Defendant does not contest the sufficiency of the evidence of premeditation and deliberation or felony murder, the other two theories supporting first degree murder.

We apply the following standard of review:  "A trial court must instruct the jury on every theory that is supported by substantial evidence, that is, evidence that would allow a reasonable jury to make a determination in accordance with the theory presented under the proper standard of proof.  (See, e.g., *People v. Crew* (2003) 31 Cal.4th 822, 835.)  We review the trial court's decision de novo.  In so doing, we must determine whether there was indeed sufficient evidence to support the giving of a lying-in-wait

---

[3]      The trial court instructed the jury:  "The defendant is guilty of first degree murder if the People have proved that the defendant murdered while lying in wait or immediately thereafter.  The defendant murdered by lying in wait if:  [¶]  1. He concealed his purpose from the person killed;  [¶]  2. He waited and watched for an opportunity to act;  [¶] AND  [¶]  3. Then, from a position of advantage, he intended to and did make a surprise attack on the person killed.  [¶]  The lying in wait does not need to continue for any particular period of time, but its duration must be substantial enough to show a state of mind equivalent to deliberation or premeditation.  Deliberation means carefully weighing the considerations for and against a choice and, knowing the consequences, deciding to act.  An act is done with premeditation if the decision to commit the act is made before the act is done.  [¶]  A person can conceal his or her purpose even if the person killed is aware of the person's physical presence.  [¶]  The concealment can be accomplished by ambush or some other secret plan."  (CALCRIM No. 521.)

4

instruction. Stated differently, we must determine whether a reasonable trier of fact could have found beyond a reasonable doubt that defendant committed murder based on a lying-in-wait theory. (E.g., *People v. Ceja* (1993) 4 Cal.4th 1134, 1137; *People v. Hardy* [(1992)] 2 Cal.4th 86, 163-164.)" (*People v. Cole* (2004) 33 Cal.4th 1158, 1206; accord, *People v. Quiroz* (2013) 215 Cal.App.4th 65, 76.)

The elements of lying-in-wait murder are as follows: "Murder perpetuated by lying in wait requires an intentional murder 'committed under circumstances which include (1) a concealment of purpose, (2) a substantial period of watching and waiting for an opportune time to act, and (3) immediately thereafter, a surprise attack on an unsuspecting victim from a position of advantage . . . .' (*People v. Morales* (1989) 48 Cal.3d 527, 557 [disapproved on another point in *People v. Williams* (2010) 49 Cal.4th 405, 459].)" (*People v. Hardy, supra,* 2 Cal.4th at p. 163; accord, *People v. Russell* (2010) 50 Cal.4th 1228, 1244.) The purpose of the watching and waiting element is to distinguish cases in which an accused acts insidiously from those in which a defendant acts out of rash impulse. (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1073; *People v. Stevens* (2007) 41 Cal.4th 182, 202.) The periods of watching and waiting need not be of a particular duration but must only be substantial. (*People v. Mendoza, supra,* 52 Cal.4th at p. 1073; *People v. Russell, supra,* 50 Cal.4th at p. 1244.) Our Supreme Court has held: "'[W]e have never placed a fixed time limit on this requirement. Indeed, the opposite is true, for we have previously explained that "[t]he precise period of time is also not critical." (*People v. Ceja*[, *supra*,] 4 Cal.4th [at p.] 1145.) . . . [A] few minutes can suffice.' (*People v. Moon* [(2005)] 37 Cal.4th [1,] 23; see also *People v. Edwards* (1991) 54 Cal.3d 787, 823 ['We have never required a certain minimum period of time, only a period not insubstantial. . . . .'] [¶] . . . '[T]he precise period of time is . . . not critical. As long as the murder is immediately preceded by lying in wait, the defendant need not strike at the first available opportunity, but may wait to maximize his position of advantage before taking his victim by surprise." (*People v. Russell, supra,* 50 Cal.4th at pp. 1244-1245.)

5

Here, defendant waited out of sight until:  Ms. King attracted Mr. King's attention; Mr. King came to the door of his shop; and Mr. King opened the door.  It was not until Mr. King opened the door that defendant attacked.  This was substantial evidence of lying in wait, warranting the lying-in-wait murder instruction.  The trial court did not err.

### III.  The Pathologist's Testimony and the Confrontation Clause

At trial, a forensic pathologist, Dr. Eugene Carpenter, who did not perform the autopsy, testified for the prosecution.  Dr. Ogbonna Chinwah, who performed the autopsy, had since retired.  Dr. Carpenter testified that in Dr. Chinwah's opinion a particular stab wound caused the victim's death.  Even if this was error, it was harmless beyond a reasonable doubt; the cause of the victim's death was not in dispute at trial. (*People v. Trujeque* (2015) 61 Cal.4th 227, 276; *People v. Edwards* (2013) 57 Cal.4th 658, 707.)  Because there was no prejudice, defendant's ineffective assistance of counsel claim also fails.  (*Strickland v. Washington* (1984) 466 U.S. 668, 697; *People v. Carrasco* (2014) 59 Cal.4th 924, 982; *In re Champion* (2014) 58 Cal.4th 965, 1007-1008.)

### IV.  Presentence Custody Credit

The trial court awarded defendant credit for 1,174 days in presentence custody. We asked the parties to brief the question whether defendant was entitled to presentence credits of two additional days.  Defendant was arrested on September 21, 2011, and sentenced on December 9, 2014.  Therefore, he should have received credit for 1,176 days in presentence custody.

## IV. DISPOSITION

The judgment is modified to award defendant, Davon Westley Moore, two additional days of presentence custody credit. The judgment is affirmed in all other respects. Upon remittitur issuance, the superior court clerk is to prepare an amended abstract of judgment reflecting 1,176 days of presentence custody credit. The superior court clerk is to then deliver a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P.J.

We concur:


MOSK, J.


KRIEGLER, J.

7